UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-cv-62691-Dimitrouleas/Snow

JOHNNIE RAY MILLER, JR.,

        Plaintiff,
v.

LANDAMERICA HOLDINGS & INVESTMENTS
GROUP, LLC D/B/A LANDAMERICA HOMES,
VINCENT T. PRINCE, TERRY COLEY,

        Defendants.
_____/

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, JOHNNIE RAY MILLER, JR. ("Miller") by and through the undersigned counsel, pursuant to Fed. R. Civ. P. 56 and L.R. 56.1, hereby files this motion seeking judgment as a matter of law that (1) Defendant LANDAMERICA HOLDINGS & INVESTMENTS GROUP, LLC D/B/A LANDAMERICA HOMES ("LandAmerica") is a covered enterprise under the Fair Labor Standards Act ("FLSA"), and (2) that Defendants VINCENT T. PRINCE ("Prince") and TERRY COLEY ("Coley") are individually liable for LandAmerica's liability under the FLSA; in support, Plaintiff states the following:

**I. Statement of Material Facts**

1.     LandAmerica was formed in July 2004, in the State of Florida, as a limited liability company. It has been an active Florida limited liability company continuously since November 2007. LandAmerica's current place of business is located at 2200 North Commerce Parkway, Suite

1

200, Weston, Florida 33236. The owners of LandAmerica include Vincent T. Prince and Terry Coley. *Prince Sworn Statement* [DE 21-1] at ¶¶ 1-2; *Coley Sworn Statement* [DE 21-1] at ¶¶ 1-2.

2. LandAmerica is a real estate and land developer. Prince and Coley are managing members of LandAmerica and control the business affairs of LandAmerica. *Prince Sworn Statement* [DE 21-1] at ¶¶ 2; *Coley Sworn Statement* [DE 21-1] at ¶¶ 2-3.

3. Miller and coworker Larry Darnell Mitchell ("Mitchell") were employed by LandAmerica on the Casa Del Sol project in West Palm Beach, Florida. *Miller Affidavit* at ¶ 3; *Mitchell Affidavit* at ¶ 3.

4. Coley hired both Miller and Mitchell. *Miller Affidavit* at ¶¶ 4-5; *Mitchell Affidavit* at ¶¶ 4-5.

5. The Casa Del Sol project was the construction of 34 townhomes, and is worth approximately $10 million. *Miller Affidavit* at ¶ 3; *Mitchell Affidavit* at ¶ 3.

6. LandAmerica employed Miller as a back-hoe operator and laborer. *Miller Affidavit* at ¶ 4; *Mitchell Affidavit* at ¶ 4.

7. LandAmerica employed Mitchell as an engineer. *Miller Affidavit* at ¶ 5; *Mitchell Affidavit* at ¶ 5.

8. Miller and Mitchell worked for LandAmerica during the period of approximately March 23, 2016 through April 8, 2016. *Miller Affidavit* at ¶ 6; *Mitchell Affidavit* at ¶ 6.

9. Miller and Mitchell were not employed by Top Dog Plumbing or Melvin King. *Miller Affidavit* at ¶ 7; *Mitchell Affidavit* at ¶ 7.

10. Prince and Coley supervised Miller and Mitchell's duties, directed and controlled their work and schedule, and were directly responsible for paying their compensation. *Miller Affidavit* at ¶ 8; *Mitchell Affidavit* at ¶ 8.

11. On or about April 1, 2016, Miller, Mitchell, and Coley, traveled to a Bank of America bank. At the bank, Coley paid Miller and Mitchell $200.00 each as partial payment for work they performed on the Casa Del Sol project. *Miller Affidavit* at ¶ 9; *Mitchell Affidavit* at ¶ 9.

12. Miller was paid another $150.00 in cash by Prince and Coley during Miller's employment with LandAmerica. *Miller Affidavit* at ¶ 10; *Mitchell Affidavit* at ¶ 10.

13. "Top Dog Plumbing" is a fake company made up by Melvin King. Melvin King does not own any corporate entity registered with the State of Florida called "Top Dog Plumbing." Melvin King simply calls himself "Top Dog Plumbing" and does small odd jobs in and around the Miami Gardens area of South Florida. *Miller Affidavit* at ¶ 11; *Mitchell Affidavit* at ¶ 11.

14. Miller and Mitchell are not aware of any bank accounts owned by Melvin King. Anytime Melvin King was given a check for plumbing work, he would cash it at a check cashing store. *Miller Affidavit* at ¶ 12; *Mitchell Affidavit* at ¶ 12.

15. Miller and Mitchell did not work for Melvin King or his fictitious company "Top Dog Plumbing." *Miller Affidavit* at ¶ 13; *Mitchell Affidavit* at ¶ 13.

16. During Miller's employment with LandAmerica, Miller operated a backhoe manufactured by J.C. Bamford Excavators Limited ("JCB"). The JCB backhoe was manufactured in Georgia. *Miller Affidavit* at ¶ 14; *Mitchell Affidavit* at ¶ 14.

17. LandAmerica rented the JCB backhoe that Miller used from Sunbelt Rentals. *Miller Affidavit* at ¶ 15; *Mitchell Affidavit* at ¶ 15.

18.     Coley, on behalf of LandAmerica, ordered and had delivered to the Casa Del Sol project plumbing pipes that were manufactured in North Carolina. *Miller Affidavit* at ¶ 16; *Mitchell Affidavit* at ¶ 16.

19.     Coley, on behalf of LandAmerica, rented U-Haul vans to transport tools, supplies, and equipment for use on the Casa Del Sol project. These items included spray paint, safety vests, safety helmets, shovels, measuring rollers, blueprints, ground stakes and other items. These items, and the Ford U-Haul van, were manufactured outside Florida. Miller and Mitchell drove and rode in the U-Haul van and handled the materials in the U-Haul van. *Miller Affidavit* at ¶ 17; *Mitchell Affidavit* at ¶ 17.

20.     LandAmerica, Prince, and Coley dictated Miller's and Mitchell's work schedules. LandAmerica, Prince, and Coley required Miller and Mitchell to report to work at 8:00 AM and Miller and Mitchell were not allowed to leave work until 4:00 PM. *Miller Affidavit* at ¶ 18; *Mitchell Affidavit* at ¶ 18.

21.     Prince and Coley supervised Miller's and Mitchell's work and duties, inspected the work Miller and Mitchell did, and made sure Miller and Mitchell were performing their work to Prince and Coley's specifications. Prince and Coley regularly performed site checks on the jobsite. *Miller Affidavit* at ¶ 19; *Mitchell Affidavit* at ¶ 19.

22.     Neither Miller nor Mitchell managed other people or otherwise had management duties. Miller and Mitchell's opportunities' to earn compensation were limited to LandAmerica's, Prince's, and Coley's assignment of work for Miller and Mitchell to perform. *Miller Affidavit* at ¶ 20; *Mitchell Affidavit* at ¶ 20.

23. Prince told Miller and Mitchell that their rates of pay for working on the Casa Del Sol project would be $150 per day. *Miller Affidavit* at ¶ 21; *Mitchell Affidavit* at ¶ 21.

24. During Miller's employment, when he complained to Prince about not receiving his pay, Prince responded, "Nigga, don't worry, LandAmerica makes more than a million dollars a year. You'll get your money." *Miller Affidavit* at ¶ 22.

25. LandAmerica provided Miller's and Mitchell's tools, supplies, and equipment necessary to do their work at Casa Del Sol. *Miller Affidavit* at ¶ 23; *Mitchell Affidavit* at ¶ 22.

26. Prince handled payroll for LandAmerica. *Prince's Response to Plaintiff's First Request for Admissions* at ¶ 1.

27. Prince was responsible for paying employees of LandAmerica. *Prince's Response to Plaintiff's First Request for Admissions* at ¶ 3.

28. Prince managed the day-to-day operations of LandAmerica. *Prince's Response to Plaintiff's First Set of Interrogatories* at ¶¶ 2-3.

29. Prince is a managing member of LandAmerica, and his duties include bookkeeping, accounting and other financial matters, such as paying vendors, employees, etc. *Prince's Response to Plaintiff's First Request for Admissions* at ¶ 6.

30. Prince and Coley, along with other members of LandAmerica's management, collectively manage the operations of LandAmerica together. *Prince's Response to Plaintiff's First Request for Admissions* at ¶¶ 7 and 8.

## II. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the initial burden of establishing that no genuine issues of material fact remain. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). "If the non-moving party fails to show a genuine issue exists, summary judgment should be granted." *Herman v. City of St. Petersburg*, 131 F. Supp. 2d 1329 (M.D. Fla. 2001) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).

### III. The Fair Labor Standards Act

The FLSA was enacted in 1938 to ensure that every employee receives "a fair day's pay for a fair day's work." *A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (quoting address to Congress by Franklyn D. Roosevelt in 1937). In light of the FLSA's **broad remedial purposes**, it is well settled that the FLSA is to be **liberally construed** to apply to the furthest reaches consistent with congressional direction. *See Biggs v. Wilson*, 1 F.3d 1537 (9th Cir. 1993). The FLSA requires that employees be paid minimum wage for their work, and that employees who work more than forty hours per week receive overtime compensation at the rate of "time and a half" for every hour over forty. 29 U.S.C. § 207(a)(1) and (e); 29 C.F.R. § 778.108. Employers who violate the overtime provisions of the FLSA "shall be liable to the employee or employees affected in the amount of…their unpaid overtime compensation…and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

### IV. Enterprise Coverage

FLSA's enterprise coverage has two requirements:

> An employer falls under the enterprise coverage section of the FLSA if it 1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and 2) has at

6

> least $500,000 of "annual gross volume of sales made or business done." 29 U.S.C. § 203(s)(1)(A).

*Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010)

Defendants never denied in their Answer [DE 8] the allegations in Plaintiff's Complaint [DE 1] alleging FLSA's enterprise coverage. Similarly, Defendants' Answer never asserted any affirmative defense denying that FLSA's enterprise coverage applied to LandAmerica.

Enterprise coverage is asserted in Plaintiff's Complaint [DE 1] at ¶ 3:

> 3. At all times material hereto, Defendant, LANDAMERICA HOLDINGS & INVESTMENTS GROUP, LLC D/B/A LANDAMERICA HOMES, was a Florida corporation with its principal place of business in South Florida, engaged in commerce in the field of land development, at all times material hereto was the "employer" of Plaintiff as that term is defined under statutes referenced herein, engaged along with its employees in interstate commerce, and has annual gross sales and/or business volume of $500,000 or more.

*Plaintiff's Complaint* [DE 1] at ¶ 3.

Defendants' Answer [DE 8] at ¶ 3 ***only denies that Plaintiff was an employee*** and admits the allegations pertaining to Defendants' business:

> 3. Admitted in part and Denied in part. Defendants admit that LandAmerica is a Florida corporation that engages in Real Estate Development. However, Defendant's vehemently denies that the Plaintiff Miller was ever an employee of LandAmerica.

*Defendants' Answer* [DE 8] at ¶ 3.

Defendants' Answer never denies the allegations in Plaintiff's Complaint that LandAmerica "engaged in commerce in the field of land development,"[1] "engaged along with its employees in interstate commerce,"[2] and "has annual gross sales and/or business volume of $500,000 or more."[3] None of Defendants' affirmative defenses assert that LandAmerica was not engaged in interstate commerce or did not generate $500,000 gross annual revenue.

Pursuant to Rule 8(b)(6), Fed. R. Civ. P., enterprise coverage is deemed admitted. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also, e.g., Hall v. Aetna Cas. and Sur. Co.,* 617 F.2d 1108, 1111 (5th Cir. 1980) ("Under Federal Rule of Civil Procedure 8(d) [now Rule 8(b)(6)], the effect of [the insurer's] failure to deny coverage under its policy was to admit this coverage."); *Pacific Indem. Co. v. Broward County,* 465 F.2d 99, 103 (5th Cir. 1972) ("If the answer fails to deny an averment in the complaint it is deemed admitted.").

Like the insurance context in *Hall*—where the effect of the insurer's failure to deny coverage under its policy was to admit coverage—in the present case, the effect of the employer's failure to deny enterprise coverage under the FLSA was to admit enterprise coverage.

---

[1] Plaintiff's Complaint [DE 1] at ¶ 3.
[2] *Id.*
[3] *Id.*

Additionally, Miller's employment with Defendants was on a construction project involving 34 townhomes and worth approximately $10 million.[4] Prince *admitted* to Miller that LandAmerica generates more than $1 million per year.[5]

Miller and Mitchell were employees of LandAmerica. LandAmerica, Prince, and Coley dictated Miller's and Mitchell's work schedules.[6] LandAmerica, Prince, and Coley required Miller and Mitchell to report to work at 8:00 AM and Miller and Mitchell were not allowed to leave work until 4:00 PM.[7] Prince and Coley supervised Miller's and Mitchell's work and duties, inspected the work Miller and Mitchell did, and made sure Miller and Mitchell were performing their work to Prince and Coley's specifications.[8] Prince and Coley regularly performed site checks on the jobsite. Neither Miller nor Mitchell managed other people or otherwise use management duties. Miller and my opportunities' to earn compensation were limited to LandAmerica's, Prince's, and Coley's assignment of work for us to perform.[9] Prince told Miller and Mitchell that our rates of pay for working on the Casa Del Sol project would be $150 per day.[10] LandAmerica provided Miller's and Mitchell's tools, supplies, and equipment necessary to do their work at Casa Del Sol.[11]

---

[4] *Plaintiff's Statement of Material Facts* at ¶ 5.
[5] *Id.* at ¶ 24.
[6] *Id.* at ¶ 20.
[7] *Id.*
[8] *Id.* at ¶ 21.
[9] *Id.*
[10] *Id.* at ¶ 23.
[11] *Id.* at ¶ 25.

Miller and Mitchell handled tools, supplies, and equipment that were manufactured outside Florida. During Miller's employment with LandAmerica, Miller operated a backhoe manufactured by J.C. Bamford Excavators Limited ("JCB").[12] The JCB backhoe was manufactured in Georgia.[13] LandAmerica rented the JCB backhoe that Miller used from Sunbelt Rentals.[14] Coley, on behalf of LandAmerica, ordered and had delivered to the Casa Del Sol project plumbing pipes that were manufactured in North Carolina.[15]

Coley, on behalf of LandAmerica, rented U-Haul vans to transport tools, supplies, and equipment for use on the Casa Del Sol project.[16] These items included spray paint, safety vests, safety helmets, shovels, measuring rollers, blueprints, ground stakes and other items.[17] These items, and the Ford U-Haul van, were manufactured outside Florida.[18] Miller and Mitchell drove and rode in the U-Haul van and handled the materials in the U-Haul van. *Miller Affidavit* at ¶ 17; *Mitchell Affidavit* at ¶ 17.[19]

Accordingly, FLSA's enterprise coverage applies.

---

[12] *Plaintiff's Statement of Material Facts* at ¶ 16.
[13] *Id.*
[14] *Id.* at ¶ 17.
[15] *Id.* at ¶ 18.
[16] *Id.* at ¶ 19.
[17] *Id.*
[18] *Id.*
[19] *Id.*

## V. Individual Liability

The standard for Defendants Vincent T. Prince and Terry Coley to be individually liable is as follows:

> An employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). To determine whether an individual is an employer under the FLSA, and thus individually liable for an FLSA violation, a court must examine the "economic reality" of the relationship between the parties. *Villareal v. Woodham,* 113 F.3d 202, 205 (11th Cir.1997). Factors include whether the individual: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (citations omitted). "To be personally liable, an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Patel v. Wargo,* 803 F.2d 632, 638 (11th Cir.1986). Whether an individual is an employer within the meaning of the FLSA "does not depend on technical or isolated factors but rather on the circumstances of the whole activity." *Alvarez Perez v. Sanford–Orlando Kennel Club, Inc.,* 515 F.3d 1150, 1160 (11th Cir.2008) (internal quotation marks and citation omitted).

*Rubio v. Fuji Sushi & Teppani, Inc.*, 6:11-CV-1753-ORL-37, 2013 WL 230216, at *5 (M.D. Fla. Jan. 22, 2013).

Prince and Coley are managing members of LandAmerica and control the business affairs of LandAmerica.[20] Coley hired Miller and Mitchell.[21] Prince and Coley supervised Miller and

---

[20] *Plaintiff's Statement of Material Facts* at ¶ 2.
[21] *Id.* at ¶ 4.

11

Mitchell's duties, directed and controlled their work and schedule, and were directly responsible for paying their compensation.[22] Coley directly paid Miller and Mitchell.[23] Coley directly ordered parts for LandAmerica's Casa De Sol's construction project.[24] LandAmerica, Prince, and Coley dictated Miller's and Mitchell's work schedules. LandAmerica, Prince, and Coley required Miller and Mitchell to report to work at 8:00 AM and Miller and Mitchell were not allowed to leave work until 4:00 PM.[25] Prince and Coley supervised Miller's and Mitchell's work and duties, inspected the work Miller and Mitchell did, and made sure Miller and Mitchell were performing their work to Prince and Coley's specifications.[26] Prince and Coley regularly performed site checks on the jobsite.[27] Prince set Miller and Mitchell's rates of pay to $150 per day for working on the Casa Del Sol project.[28] Prince directly promised Miller that he would be paid the money he was owed: During Miller's employment, when he complained to Prince about not receiving his pay, Prince responded, "Nigga, don't worry, LandAmerica makes more than a million dollars a year, you'll get your money."[29] Prince handled payroll for LandAmerica.[30] Prince was responsible for paying

---

[22] *Id.* at ¶ 10.
[23] *Id.* at ¶ 11.
[24] *Id.* at ¶ 18.
[25] *Plaintiff's Statement of Material Facts* at ¶ 20.
[26] *Id.* at ¶ 21.
[27] *Id.*
[28] *Id.* at ¶ 23.
[29] *Id.* at ¶ 24.
[30] *Id.* at ¶ 26.

employees of LandAmerica.[31] Prince managed the day-to-day operations of LandAmerica.[32] Prince is a managing member of LandAmerica, and his duties include bookkeeping, accounting and other financial matters, such as paying vendors, employees, etc.[33] Prince and Coley, along with other members of LandAmerica's management, collectively manage the operations of LandAmerica together.[34]

Accordingly, Defendants Prince and Coley should be individually liable, jointly and severally, for any violations for which LandAmerica is held liable at trial.

### VI. Conclusion

For the foregoing reasons, this Motion should be GRANTED as follows: (1) FLSA's enterprise coverage applies to LandAmerica and, (2) Defendants Vincent T. Prince and Terry Coley are individually liable, jointly and severally, for any FLSA violations Defendant LandAmerica is held liable for at trial.

---

[31] *Id.* at ¶ 27
[32] *Id.* at ¶ 28
[33] *Id.* at ¶ 29.
[34] *Id.* at ¶ 30

13

          Respectfully submitted,

          Koz Law, P.A.
          320 S.E. 9th Street
          Fort Lauderdale, Florida 33316
          Phone: (786) 924-9929
          Fax:    (786) 358-6071
          Email: ekoz@kozlawfirm.com

          Elliot Kozolchyk, Esq.
          Bar No.: 74791

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on December 22, 2017 with the Clerk of Court using CM/ECF along with having served all counsel of record or pro se parties identified on the service list incorporated herein in the manner specified, either via transmission of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notice of Electronic Filing.

          Respectfully submitted,

          Elliot Kozolchyk, Esq.

## **SERVICE LIST**

Don R. Boswell, Esq.
*Counsel for Defendant*
Akers & Boswell, P.A.
2161 Palm Beach Lakes Blvd., Suite 407
West Palm Beach, FL 33409
Tel: (561) 547-6300
Fax: (561) 828-9212
E-mail: dboswell@akers-boswell.com